## ADOPTION OF LINUS
(and a companion case[1]).

No. 08-P-1334.

Middlesex. November 18, 2008. - March 12, 2009.

Present: McHUGH, DREBEN, & KATZMANN, JJ.

*Parent and Child,* Adoption, Dispensing with parent's consent to adoption. *Adoption,* Dispensing with parent's consent, Parent's consent. *Minor,* Adoption.

In a proceeding on a care and protection petition, the Department of Children and Families did not meet its burden of proving current parental unfitness by clear and convincing evidence, where the evidence of the parents' misconduct was stale, and where, although there was no doubt that the parents would have a difficult task in caring for three children (two of whom have extensive needs), concern that the children might prove to be too much for the parents, in the absence of evidence of current unfitness, was insufficient to take the extreme step of terminating the parents' legal relationship with their children. [820-822]

PETITION filed in the Middlesex County Division of the Juvenile Court Department on December 9, 2002.

The case was heard by *Leslie A. Donahue,* J.

*Deborah W. Kirchwey* for the father.

*Deborah Sirotkin Butler* for the mother.

*Lynne M. Murphy* for Department of Children and Families.

*Penny Nasios* for the children.

DREBEN, J. After a trial with intermittent hearings over a period of fourteen months on a care and protection petition filed by the Department of Children and Families (department) in 2002, a judge of the Juvenile Court adjudicated the biological mother and father unfit to parent their children Linus and Malcolm and terminated their parental rights pursuant to G. L. c. 210, § 3.

---

[1]Adoption of Malcolm. All the children's names in this opinion are pseudonyms.

Both the mother and father appeal, claiming, among other things, that the judge erred in ruling each of them unfit and in terminating their parental rights.

1. *Procedural background.* On December 9, 2002, the department filed a care and protection petition alleging that the mother and father were neglecting their sons Linus (born in February, 1999) and Malcolm (born in July, 2000). Both children were born testing positive for opiates and methadone.[2] A third child, Alice, was born in November, 2003, testing positive for methadone but not for illegal drugs. Although the department filed a care and protection proceeding for her and she was placed in the department's temporary custody because the mother had given a false address, she was returned to the mother on October 12, 2004. She has remained with her parents since that date. She was born with Down syndrome, congenital heart failure, an enlarged liver, and other ailments. The department has no concerns about Alice despite her extensive medical needs. The judge found that the parents demonstrated a level of parenting skill adequate to care for Alice. According to the mother, both parents share in the responsibility of taking care of Alice.

The department changed its goal for the two boys in February, 2004, because neither parent had provided ongoing verification of sobriety nor obtained appropriate housing. The children were placed in separate preadoptive homes, Linus on July 22, 2005, and Malcolm on May 28, 2005.[3] Until the goal was changed, the parents first had weekly two-hour visits, then twice-monthly visits for two hours. Once the goal changed, visits were reduced to one-hour monthly visits. The judge found that the parents

---

[2]The department had previously filed care and protection petitions for these children. As a result, Linus was in the department's temporary custody between March 19, 1999, and November 2, 1999, at which time he was returned to his mother. A second care and protection proceeding was filed in June, 2000, on his behalf, and he was placed in the temporary custody of the department. On August, 25, 2000, Malcolm, who had been in the hospital since his birth, was cleared for discharge from the Lowell General Hospital. Although on August 28, he had been added to the department's June petition, he joined his mother on August 30, 2000. On September 29, 2000, Linus was returned to the mother. On May 16, 2001, the June, 2000, care and protection petition was dismissed.

[3]Both boys appear to have had four different placements in foster homes since December, 2002, prior to their placement in preadoptive homes.

"always attended the visits regularly" and that Alice had been present at the visits since her birth.

In February or March, 2006, contrary to department regulations,[4] Malcolm's visits were suspended without court order and were not resumed until August, 2007. Linus's visits were suspended, also without court order, between April and September, 2006.[5] On April 20, 2007, the judge, ruling on a motion filed by the mother, found that the department had acted improperly by suspending visits without authorization. On that date the judge also denied the children's motion to suspend visitation. The first visit with Malcolm occurred in August, 2007. The judge found that it was "a positive experience and lasted for a full hour despite [Malcolm] having been told that he could terminate the visit at any time."

2. *Judge's basis for the finding of unfitness and the termination of parental rights.* At the conclusion of trial, the judge noted that this was a difficult case. While she had justifiable concerns as to the additional stress which would inevitably be produced by the addition of two boys to the family, an analysis of her findings and the evidence leads us to conclude that there is insufficient support for the finding of unfitness and for the termination of parental rights.

After setting forth the procedural history of the case, the judge discussed the parents and the two boys. She summarized the mother's drug and criminal history,[6] her upbringing with alcoholic parents, her diagnosis of bipolar disorder, and her voluntary

---

[4]Title 110 Code Mass. Regs. § 7.128 (1998) provides that "if the Department seeks to terminate visitation between child and the parents, it will not do so unless the matter is brought before a judge, and the judge makes specific findings demonstrating that parental visits will harm the child or the public welfare, unless a parent(s)'s right to notice of and consent to a child's adoption has been voluntarily or involuntarily dispensed with, whether or not the judgment dispensing with that right is on appeal. See *Custody of a Minor (No. 2)*, 392 Mass. 719, 725-726 (1984)."

[5]Although there had been some difficulties with the children's behavior after visits, the reason appeared to be that the parents brought unsuitable snacks and gifts to the visits. Linus's therapist suggested that those items not be given to the children, and as reported by the most recent department social worker, when such gifts were stopped, the visits went more smoothly.

[6]Her criminal history included charges for possession of a class A controlled substance, possession of hypodermic needles, operating after a suspended license, attaching the wrong license plates to a vehicle, larceny from a person

relinquishment of two older children to a cousin for adoption because of her drug dependence. Although noting that the mother's methadone clinic "provided documentation confirming more than two years of sobriety [of the mother] on June 2, 2005," the judge found that "she is also *dealing* with substance abuse problems" (emphasis added). There was no evidence of any substance abuse after 2003. The judge also stated that the mother "had *ongoing* problems with homelessness" (emphasis added). This finding is also erroneous. Although the mother was living in a shelter from February, 2005, to February, 2006, there was unrefuted evidence from the most recent department social worker that the mother and father lived together in an apartment between June 17, 2004, and February, 2005. The social worker also testified that from February, 2006, until the end of the trial in August, 2007, the mother was living with the father in housing suitable for the boys. The judge stated that the mother was in partial compliance with her service plan at the end of trial, yet the social worker stated that both parents were in compliance.[7]

In discussing the father, the judge pointed out that he has not been cooperative in working with the department. The judge stated that the father "has never provided documentation regarding employment or sobriety." These findings were based upon an earlier foster care review and were inconsistent with the more recent testimony of the department's social worker.[8]

The judge also discussed the boys. She described Linus's various placements, see note 3, *supra*, the difficulties of visitation for Linus, the suspension of visits from April, 2006, to September,

---

sixty-five years or older, larceny of more than $250, common nightwalking, a true name violation, use without authority, unnatural acts, and prostitution. Her most recent arrest was in January, 2003, for offering sex for money, for which she completed a year of probation. The father's criminal history included charges of possession of a class A controlled substance in 1997, larceny of more than $250 in 1996, and juvenile charges of larceny of a motor vehicle and carrying a dangerous weapon in 1991.

[7]The social worker testified in April, 2007, that the parents met all the tasks set out for them including obtaining stable housing and employment, having Alice attend school, providing for Alice's educational and medical needs, and meeting with the collaterals.

[8]The social worker stated that both parents were in compliance, that he had received notification from the methadone program that the father continued to remain sober and his drug screens were negative, and that he had been employed since January, 2007.

2006, and Linus's taking medicine for attention deficit hyper-activity disorder. In her conclusions, she discussed Linus's progress in his preadoptive home and his bonding with those parents.

Malcolm is a more needy child. The judge found that Malcolm has mild persistent asthma and is severely vision impaired. He was diagnosed with "pervasive developmental delays, both academic and social, and has been receiving occupational therapy, modified gym classes, and at one point was receiving speech therapy." The judge described his various placements, the vocations of his preadoptive parents, and his progress and bonding with his preadoptive family.

After the foregoing discussion, the judge, under the rubric "Conclusions of Law," set forth principles from Massachusetts appellate cases, and included the following findings which were interspersed with principles of law:

> "The Court in this case considered no single factor, but all of the evidence before it in making a determination of unfitness of the parents. The Court considered, for example, the parents' lack of full cooperation with service tasks and services, their inability to regain custody of the children throughout their nearly five years in Department custody, and the relationships formed between [Linus] and [Malcolm] and their respective pre-adoptive families.
>
> ". . .
>
> "The Court had initially found that the drug use, homelessness, and neglect of the children by the parents endangered them, and that now the severing of the attachment of the children to their pre-adoptive families would endanger them.
>
> ". . .
>
> "In this case, a history of drug use by both parents, the ongoing unemployment of both parents, and mother's ongoing problems with homelessness indicate an inability to meet the children's needs.
>
> ". . .
>
> "In the present case, the variety of special needs,

presented in particular by [Alice], but also [Malcolm] and [Linus] renders mother and father unfit to care for all three children. [Alice's] special needs make her an extremely demanding child, a child likely to take up so much of the parents' time, energy, and resources that little is left to spend on other children. Given the history of parenting issues, mother and father are not prepared to handle two more children in addition to the very demanding child they are dealing with presently.

"...

"In this case, though mother and father currently demonstrate a level of parenting skill adequate to care for [Alice], the special circumstances surrounding the care and custody of [Linus] and [Malcolm] render the parents unfit to parent them without regard for the current quality of their parenting. The fact that the boys have spent the majority of their lives in Department custody and have made such significant connections and bonds with their respective pre-adoptive families is a more determinative factor in this case than the parenting capabilities of their biological parents at this point."

The judge's remaining conclusions, including a discussion of the fourteen statutory factors of G. L. c. 210, § 3, reiterated the lack of stable housing; the lack of compliance or cooperation with services, e.g., the failure to complete a parenting class; the progress the boys have made with their preadoptive parents; the strong bonds the boys formed with them, the severance of which would cause serious psychological damage; and the biological parents' lack of capacity to meet the special needs of the children on removal.

There are problems with the judge's findings and conclusions. First and foremost is that the evidence of the parents' misconduct is stale; it shows past unfitness, but not, as required, current unfitness. "The passage of four years is too long a period to rely on the predictive value of past behavior without verification — especially when evidence contradicting the prediction is readily available." *Adoption of Rhona*, 57 Mass. App. Ct. 479, 486 (2003) (footnote omitted), *S.C.*, 63 Mass. App. Ct. 117 (2005). There is

no current evidence of illegal drug ingestion; moreover, ingestion alone would not prove unfitness. See *Adoption of Katharine*, 42 Mass. App. Ct. 25, 33-34 (1997). Second, the parents are no longer homeless. The record indicates that at least from February, 2006, through the end of trial in August, 2007, they had housing suitable for the two boys. Even if they had been homeless, under department regulation 110 Code Mass. Regs. § 1.11 (2000), "children should never be removed from their parents and placed into substitute care on the sole basis of homelessness of a family." Moreover, there was evidence from the department's social worker that the parents were in compliance with their service plans at the time of his testimony in April, 2007. In any event, the parents' failures, if any, to comply with parenting classes or regular urine screens, in the absence of any evidence that they were on drugs, and their care of Alice with all her needs, do not appear related to any "clearly identified deficiencies" on their part and, hence, are not significant. *Adoption of Yale*, 65 Mass. App. Ct. 236, 242 (2005).

There is no doubt that the parents will have a difficult task in caring for three children, two of whom are extremely needy. However, the parents have managed well with Alice and the father has, according to the mother, taken much responsibility for his daughter's care. When the mother was in a shelter with Alice from February, 2005, until February, 2006, he visited daily. The visiting nurse's records attest to Alice's good care.[9] Alice is now in a school where she is receiving many of the services previously provided by the parents.

The judge's conclusion that the parents are currently unfit to take care of three children is not based on any evidence elicited at trial.[10] "A parent's right to the custody of his or her child may not be terminated . . . without clear and convincing evidence

[9]The nurse wrote on numerous occasions that mother was doing "great" with Alice.

[10]A court investigator reported that a Department of Public Health social worker thought that if the mother were given custody of her sons, she would need to get support in the form of day care and summer programming. The reporter also wrote that the program manager at the mother's shelter stated that mother "could probably handle three kids" if they were going to school. The mother considered that she could care for the boys but recognized that a period of transition might be in order.

that the parent is currently unfit to further the child's best interest." *Adoption of Carlos*, 413 Mass. 339, 348 (1992). Of course, there is concern that three children may prove to be too much for these parents, but such concern, not based on fact, is insufficient to take the "extreme step" of terminating the parent and child's legal relationship. *Id.* at 350.

That there is bonding with the preadoptive parents does pose problems. The department exacerbated the problem by terminating visitation without court approval.[11] As pointed out in *Adoption of Rhona*, 57 Mass. App. Ct. at 490, quoting from *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 16 Mass. App. Ct. 607, 612 (1983), *S.C.*, 391 Mass. 113 (1984), "[i]t is unseemly for the Department to allow the process to drag on, prohibiting contact in the interim, and then argue in support of adoption that bonding has taken place." Moreover, in this case both preadoptive parents as well as the department, recognizing the strong ties the boys have with the biological parents, were in favor of postadoption visitation and sibling visits.[12] We note also that there was here no expert or other evidence of future harm to the boys if removed from their preadoptive homes.

3. *Conclusion.* For the reasons previously discussed, we consider that the department has not met its burden of proving current parental unfitness by clear and convincing evidence, see *Adoption of Iris*, 43 Mass. App. Ct. 95, 105 (1997), *S.C.*, 427 Mass. 582 (1998), and the decrees must be vacated. The matter is remanded to the Juvenile Court to determine whether the department's goal remains the termination of parental rights. If so, the judge shall determine whether the department has sufficient additional current evidence from a period subsequent to the trial to show "grievous shortcomings or handicaps" putting the children at serious risk, *Adoption of Leland*, 65 Mass. App. Ct. 580, 584 (2006), quoting from *Adoption of Katharine*, 42 Mass. App. Ct. at 28, so as to warrant a new trial and, if so, to proceed forthwith

[11]Despite the parents' seeking of visitation, the judge, while instructing the department to reinstate visitation, did not formally order such visitation, and Malcolm did not visit his parents until August, 2007.

[12]Although the judge left the questions of postadoption visitation for future decision, these questions will become moot on remand if the goal becomes reunification. In the present posture of the case, we decline to reach these issues.

to trial consistent with this opinion. Otherwise, if a new trial is unwarranted or the department's goal has changed, a plan for the reunification of the parents with their children with adequate services by the department shall be devised and implemented with judicial oversight and approval. See *Adoption of Iris*, 43 Mass. App. Ct. at 106. The transition may involve the reunification of first one child or both and will undoubtedly involve increased visitation by the parents and services, such as counselling, as determined by the department.

*So ordered.*