NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify th9e Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-764                                        Appeals Court

ADOPTION OF BIANCA.[1]


No. 16-P-764.

Middlesex.     February 10, 2017. - April 28, 2017.

Present:  Milkey, Hanlon, & Neyman, JJ.


Adoption, Dispensing with parent's consent, Visitation rights.
    Parent and Child, Dispensing with parent's consent to
    adoption, Adoption. Minor, Adoption, Visitation rights.
    Evidence, Child custody proceeding.


    Petition filed in the Middlesex County Division of the
Juvenile Court Department on March 10, 2011.

    The case was heard by Kenneth J. King, J.


    Deborah Sirotkin Butler for the mother.
    Ilse Nehring for the father.
    William T. Cuttle for Department of Children and Families.
    Yvette L. Kruger for the child.


    MILKEY, J.  This case involves the welfare of a child to

whom we shall refer as Bianca.  After trial, a Juvenile Court

judge found the child's mother and father unfit, and issued

decrees terminating their parental rights.  See G. L. c. 119,

_____

    [1] A pseudonym.

§ 26; G. L. c. 210, § 3. The judge approved a plan put forward by the Department of Children and Families (DCF) for Bianca to be adopted by a couple who were close friends of the father's family and who have cared for Bianca for much of her life.[2] Finally, the judge ordered regular postadoption contact with both parents, but permitted the preadoptive parents to terminate visitation with the mother or father if they determined it was no longer in Bianca's best interests.

On appeal, the mother and father contest the termination of their parental rights. The father also challenges the approval of the DCF adoption plan over his plan that the preadoptive parents be made Bianca's guardians so that he could seek custody in the future. The mother requests that the case be remanded to determine whether she remains unfit and to determine Bianca's current best interests. We affirm.

Background.[3] As a result of the father's abuse of the mother, Bianca's life has been fraught with instability and exposure to violence. In addition, the mother has long struggled with substance abuse, and due to incarceration or treatment, she was frequently unavailable to care for Bianca.

---

[2] We refer throughout to this couple as the preadoptive parents, although they initially served as Bianca's foster parents.

[3] We recite the facts from the judge's findings, which the parties do not contest, except to the limited extent noted.

Little would be served by providing further detail of the mother's history, particularly because she does not contest that she was unfit at the time of trial.

The father physically abused the mother throughout their marriage, including during the mother's pregnancy with Bianca, who was born in January, 2010.  The findings of fact detail twenty specific incidences of domestic violence, ten of which occurred in Bianca's presence.  In March, 2011, when Bianca was fourteen months old, DCF filed a petition for care and protection.  See G. L. c. 119, § 24.  By stipulation, the father was given conditional custody of Bianca, with the preadoptive mother providing primary caretaking responsibilities for her during the week.[4]  Among other conditions, the parents were not to be together with Bianca without the presence of a third party.  The father violated this condition and assaulted the mother again in June, August, and September, 2011.  In October, temporary custody was awarded to DCF, and Bianca was placed with the preadoptive parents.  The father completed a forty-week intimate partner abuse education program for domestic abusers (formerly known as a batterers' intervention program), and Bianca was returned to the father's care in August, 2012. Nevertheless, the abuse continued, and two months later the

---

[4] The mother was unavailable to care for Bianca at that time.

father raped the mother in Bianca's presence. As a result, Bianca was removed from the father's custody for the final time in January, 2013, and she has remained in the care of the preadoptive parents since.

At trial, Bianca's therapist testified that Bianca suffers from reactive attachment disorder and an adjustment disorder as a result of her neglected needs and disrupted attachments. Bianca needs continued treatment and stability and consistency in her care. If moved again, Bianca may be unable to attach to another caregiver.[5] The preadoptive mother has demonstrated a longstanding commitment to Bianca's treatment and education. It is uncontested that Bianca shares a bond with both the mother and father, and the preadoptive mother has ensured that Bianca remains in contact with them.

Mother's arguments. The mother argues that lengthy delays in the legal proceedings have rendered stale the facts upon which the judge relied in making his finding of unfitness. The trial began in January, 2014, and was held on twenty-four nonconsecutive days over the course of eleven months. The decrees issued in February, 2015, the mother and father filed timely notices of appeal, and the judge's findings of fact

---

[5] The father disputes this finding of fact, but it is not clearly erroneous.

issued in November, 2015.  The notice of the assembly of the record issued in May, 2016.

Although a significant amount of time has now passed, the mother has not demonstrated how this materially prejudiced her. She did not request that the trial judge reopen the record, and we cannot look beyond the current record for evidence of the mother's improvement.  The question is whether there was sufficient evidence presented at trial that the mother was on an upward trajectory to establish that it would be fundamentally unfair to resolve the case on the current record.  See Adoption of Linus, 73 Mass. App. Ct. 815, 820-821 (2009) (evidence held unduly stale where most recent evidence of mother's drug use was four years old and she had made significant improvements by time of trial).

The mother's expert witness offered only a lukewarm endorsement regarding her capacity for change, stating the view that there was "reason to believe that [the mother] could rehabilitate herself" in the future.  See Adoption of Ilona, 459 Mass. 53, 59 (2011), quoting from Adoption of Carlos, 413 Mass. 339, 350 (1992) ("[A] judge may consider evidence that provides a 'reason to believe that a parent will correct a condition or weakness that currently disables the parent from serving his or her child's best interests'").  Countering the expert's "guardedly optimistic" view was all the evidence of the mother's

prior history and patterns of relapse. Indeed, for the first five years of Bianca's life, the mother was unable to stay sober and away from the father for sustained periods of time when she was not incarcerated, and it was undisputed that she would need years of treatment before she could become healthy enough to take custody of Bianca. The judge was entitled to credit such evidence in making his finding that the mother's unfitness was likely to continue. See Adoption of George, 27 Mass. App. Ct. 265, 268 (1989) ("Prior history . . . has prognostic value"). The scant evidence that mother might be able to change her behaviors does not overcome this. See Adoption of Ilona, supra (evidence must show "a reasonable likelihood that the parent will become fit," not merely a "faint hope"). See also Adoption of Serge, 52 Mass. App. Ct. 1, 6 (2001) (brief periods of sobriety insufficient to show that mother could overcome addiction to become fit parent).

In addition, the best interests of Bianca strongly militate against reopening the trial record. Stability is important for every child, and it is particularly necessary for Bianca.[6]

---

[6] Some argument can be made that because Bianca has had regular visits with the mother, a transfer to the mother's custody, if found to be warranted on remand, might not be such a significant disruption to her. However, removal from the preadoptive parents' home would force on Bianca a series of changes (in school, playmates, and extracurricular activities) that she is likely to perceive to be significant, particularly when coupled with a change in her daily caregiver and routines.

Bianca's healthy development depends upon finality in this matter.  In circumstances such as these, a parent's postdecree improvements cannot be permitted to continually upend an unfitness determination.  It therefore is not appropriate to prolong these proceedings to expand the record.  See Adoption of Nancy, 443 Mass. 512, 517 (2005), quoting from Adoption of Gregory, 434 Mass. 117, 121 (2001) ("[W]here [a parent] has had ample opportunity to achieve fitness . . . and has failed to follow through, it is only fair to the child[] to say, at some point, 'enough'").  See also Adoption of Ilona, supra at 61, quoting from Adoption of Gregory, supra ("[T]he proper focus of termination proceedings is the welfare of the child").

The mother's remaining arguments require little discussion. She asserts that the judge did not adequately account for the way that the father's abuse affected her parenting decisions. However, the judge's fitness determination is well supported by his factual findings, which the mother does not dispute.[7]

---

The judge's findings make clear that another move is likely to cause her serious and possibly permanent harm.

[7] The judge's taking into account those of the mother's acts and behaviors that can be attributed to her victimization was not a punishment of the mother for the abuse. Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption, 383 Mass. 573, 592 (1981) ("[T]he State does not act to punish misbehaving parents; rather it acts to protect endangered children").  The judge made clear that he did not fault the mother for being a victim, but stated that the effect of the

Whatever their cause, the mother's behavior and decisions demonstrated her inability to prioritize Bianca's welfare and, therefore, were properly considered as evidence of her fitness to care for Bianca.

The mother also argues that, even if the finding of unfitness was correct, terminating her parental rights was inappropriate where the judge found that the mother has a strong bond with Bianca. We disagree. After a parent is determined to be unfit, the judge must consider whether termination is in the best interests of the child. See Adoption of Ilona, supra at 59. In light of Bianca's particular need for stability and the judge's determination that the mother would not become fit in the foreseeable future, he did not err in terminating the mother's parental rights.[8]

Father's arguments. An expert who had been qualified in battered person syndrome, parenting evaluations, and psychological assessments of adults gave general testimony at

_____

violence on Bianca and the mother's role in allowing Bianca to be exposed to such violence had to be taken into account.

[8] We pause to note that the mother has shown evident affection toward Bianca, and none of the judge's findings negate this. Despite the moral overtones of the statutory term "unfit," the judge's decision was not a moral judgment or a determination that the mother and father do not love the child. The inquiry instead is whether the parents' deficiencies or limitations "place the child at serious risk of peril from abuse, neglect, or other activity harmful to the child." Care & Protection of Bruce, 44 Mass. App. Ct. 758, 761 (1998).

trial that if an abuser remains in denial about past acts of violence, the behavior is likely to continue. Relying on this testimony, the judge found that because the father did not take full responsibility for his abusive behavior, he could not effectively be treated for domestic violence and was likely to become violent again. The father challenges the evidentiary value of the expert testimony, asserting that it amounts to "spurious profile" evidence and that the judge's findings based on it are clearly erroneous.[9] According to the father, any expert testimony would have needed to examine whether he in particular benefited from treatment.

We need not address the merits of this argument for two reasons. First, because the father failed to object to this specific evidence at trial, the argument is waived. See Adoption of Astrid, 45 Mass. App. Ct. 538, 542 (1998). Second, there was, in any event, an abundance of other evidence to support the judge's subsidiary finding that the father had not benefited from the batterers' intervention programming and was likely to become violent again. For example, as noted, the father raped the mother after he completed a domestic violence

---

[9] Specifically, the father argues that the expert was not qualified to give testimony on the psychology of batterers, that he lacked any basis for such testimony with respect to the father (whom he had not interviewed), and that the evidence was irrelevant. The father does not assert that the testimony should have been excluded.

intervention program.[10]  The father also continued to engage in manipulative behavior toward the mother even in front of the judge at trial by mouthing the words "I love you" and "I'm sorry" to her across the court room.  See Adoption of Nancy, 443 Mass. at 515 ("Subsidiary findings must be supported by a preponderance of the evidence").

There is no merit to the father's additional argument that there was insufficient evidence to support the judge's finding that Bianca was harmed by her parents' violent relationship.  As the judge found, and the father does not dispute, Bianca was exposed to at least ten incidents of physical and sexual violence between the mother and father.[11]  No expert testimony was needed as to the specific psychological effects of such violence on the child.  Our case law has long recognized that exposure to such abuse harms the child by violating her fundamental human right "to live in physical security, free from the fear that brute force will determine the conditions of one's daily life" even if it causes no documented psychological

---

[10] The judge, contrary to the father's claim, did not ignore the father's participation in additional programs after the sexual assault incident; he simply did not find this evidence to be sufficiently persuasive to overcome the other evidence of the father's continuing abusive tendencies.

[11] The father does not contest the judge's findings with respect to the domestic violence incidents.  Instead, he argues that the evidence did not establish that Bianca's mental health condition was caused by her exposure to those incidents.

damage. <u>Custody of Vaughan</u>, 422 Mass. 590, 595 (1996). Even setting that aside, in this case there was direct evidence that Bianca suffered psychological harm as a result of the violence she witnessed. We discern no error of law or fact in the termination of the father's parental rights.

<u>Approval of the adoption plan and postadoption visitation</u>. The father's challenge to the DCF adoption plan is a narrow one, focusing on the choice of adoption over guardianship.[12] In choosing among placement plans, it falls to the sound discretion of the trial judge to determine what is in the best interests of the child, and our review on appeal is one of "substantial deference." <u>Adoption of Hugo</u>, 428 Mass. 219, 225 (1998), cert. denied sub nom. <u>Hugo P</u>. v. <u>George P</u>., 526 U.S. 1034 (1999).

There is no dispute that Bianca is "thriving" with the preadoptive parents or that another disruption in care could have serious psychological consequences for her. Bianca's best interests therefore gave dispositive weight to the DCF adoption

---

[12] The mother does not challenge the approved adoption plan except to the extent that her request for remand to consider evidence of her own suitability to take custody of Bianca is at odds with that plan. At oral argument, she stated that her primary concerns are Bianca's understanding that the mother has not abandoned her and ensuring that Bianca is not placed in the father's custody.

plan, which is the only one that ensures long term stability.[13] The judge did not overlook the bonds of attachment between Bianca and the father. Indeed, he noted that one factor weighing in favor of placement with the preadoptive parents was their recognition of the importance of Bianca's continued contact with her biological family on both sides. The judge took the additional step of ordering generous postadoption visitation. He also gave due consideration to the mother's concerns regarding the father's access to Bianca given his violent history, and he empowered the preadoptive parents to limit or stop postadoption contact upon their sole determination that such contact is no longer in Bianca's best interests. Although the preadoptive mother is something of a surrogate aunt to the father, she has never given any indication that she would allow Bianca to be placed in jeopardy because of her relationship with the father.[14]

The judge's findings note that Bianca often asks where she will live and that she needs to have a firm and final answer to

---

[13] Both of the parents' plans would have Bianca placed temporarily with guardians until the parent was prepared to take custody.

[14] The judge considered this dynamic, noting one instance where the preadoptive mother reported the father's violation of a court order. We are satisfied that the preadoptive mother is aware now of the degree and nature of the abuse that the father has inflicted upon the mother and that she will give careful consideration to this history in making decisions regarding his unsupervised visits with Bianca.

that question.  The record supports the judge's finding that Bianca now has a safe and permanent home and regular contact with the mother, father, and extended family.  There was no abuse of discretion.  Far from neglecting the father and mother, the judge went out of his way to give them a role in Bianca's life while still ensuring Bianca's stability through the permanence of adoption.

<u>Decrees affirmed</u>.