The mother appeals from a decree issued by a judge of the Juvenile Court finding her unfit to parent her daughter, Cali, and terminating her parental rights.[3] See G. L. c. 210, § 3. She argues that the trial judge's factual findings are insufficient to establish her parental unfitness by clear and convincing evidence, that the Department of Children and Families (department) did not make reasonable efforts to reunify her with Cali, and that the case should be remanded for the judge to reconsider posttermination visitation. We affirm.
Background. The judge's subsidiary findings and the essential facts are uncontested. The mother has three children by two fathers. Her older two children, Cali's half-siblings, were the subjects of numerous G. L. c. 119, § 51A, reports alleging medical neglect and alcohol abuse by the mother. In 2013 the department filed a care and protection petition as to the two older children and created a service plan for the mother. The mother did not complete the recommended services, which included taking a parenting class, undergoing substance abuse treatment, and obtaining a psychological evaluation. As a result of the care and protection petition, the two older children were removed from the mother's care and placed in foster care. Ultimately, they were placed in the custody of their father.
While that case was pending, the department learned that the mother was pregnant with Cali. The department received reports during the mother's pregnancy that she had positive drug screens and had missed three prenatal appointments. When confronted about one of the positive screens, the mother told the social worker that she used marijuana to help with anxiety and lack of appetite.
In October of 2014, with the department's assistance, the mother moved to Jessie's House, a shelter for parents and children where parents can receive assistance in procuring services. Cali was born one month later. At the time of the birth, the mother tested positive for marijuana, prompting the department to file a care and protection petition and seek emergency custody of Cali. See G. L. c. 119, § 24. After a temporary custody hearing, a judge granted custody to the mother contingent on her remaining in good standing at Jessie's House and remaining drug and alcohol free, among other conditions.
In February of 2015, Jessie's House staff expressed concern that the mother had been drinking alcohol while caring for Cali. The department again sought emergency custody. After another hearing the judge granted custody to the mother subject to the same conditions in the first temporary custody order. Several days later, the mother tested positive for cocaine. The mother contested the results and was given the opportunity to retest the next day. When the second sample also came back positive for cocaine, the department was granted emergency, and later temporary, custody of Cali.
Because the mother no longer had custody, she was forced to leave Jessie's House. Earlier, Jessie's House staff had assisted the mother in obtaining a Section 8 housing voucher. When the mother claimed that an unpaid gas bill was impeding her efforts to find an apartment, the department informed her that it would pay a portion of the bill and help set up a payment plan for the rest. The mother never provided the department with a copy of the bill, however, and at trial she admitted that she did not call the gas company to ask for a copy. Due to the mother's inaction, the Section 8 voucher expired.
Throughout the time leading up to trial, which began in November of 2016, the mother remained homeless, living with relatives and various friends and moving frequently from home to home. The only address the mother provided to the department was her brother's address in the Dorchester section of Boston, where she was living at the time of trial. The department was unable to conduct a home visit at the brother's address.[4]
The mother did not comply with the majority of her service plan tasks. She did not complete a substance abuse program after she left Jessie's House, develop a relapse prevention plan, attend Alcoholics Anonymous or Narcotics Anonymous meetings, take a parenting class, or maintain contact with the department. In addition, the mother was not consistent in attending visits with Cali. Of twenty-six scheduled visits between March of 2015 and September of 2016, the mother cancelled or failed to attend five and was late to eleven. She was frequently more than fifteen minutes late. On multiple occasions she would not call to cancel until after the time scheduled for the start of the visit, by which time Cali had already been transported from her foster home to the department's area office.[5] The mother also was not properly prepared for the visits she did attend, failing to bring appropriate food, drink, and activities for Cali.
Discussion. 1. Unfitness. "To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests." Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). While the mother raises no challenge to the judge's subsidiary findings, she contends that his ultimate conclusion of unfitness is not supported by clear and convincing evidence. Specifically, she contends that the judge erred in finding her unfit based solely on her issues with substance use.
It is true that "a [drug] habit, without more, [does not] translate[ ] automatically into legal unfitness to act as a parent." Adoption of Katharine, 42 Mass. App. Ct. 25, 34 (1997). But unlike in Katharine, the evidence in this case established a nexus between the mother's substance use and her parental deficiencies: not long before Cali was born, the department filed a care and protection petition as to the mother's two older children due in part to her alcohol abuse, resulting in those children being placed in foster care. This past conduct has prognostic value, and the judge was allowed to consider it in assessing the mother's current parental fitness. See Adoption of Larry, 434 Mass. 456, 469 (2001).
The mother's past conduct is especially relevant because "the evidence support[s] the continuing vitality of such conduct." Id. Around the time she lost custody of her two older children, the mother smoked marijuana while she was pregnant with Cali. She then tested positive for cocaine, despite the requirement of the temporary custody order that she remain drug and alcohol free. During the time this case was pending, the mother did not complete a substance abuse program or develop a relapse prevention plan. Contrary to the mother's contention, the evidence of her substance use is not stale, and the judge did not err by considering it as part of the calculus. See Adoption of Nancy, 443 Mass. 512, 516 (2005).
This case is also different from Katharine because the judge's decision was not based solely on the mother's drug and alcohol use. The judge also found that the mother has been unable to maintain stable housing, did not comply with her service plan, failed to give the department her contact information, and wilfully failed to visit Cali. Though a finding of unfitness cannot be based solely on homelessness, see Adoption of Linus, 73 Mass. App. Ct. 815, 821 (2009), evidence of "the failure of the parent[ ] to keep a stable home environment" is a relevant factor for a judge to consider. Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption, 399 Mass. 279, 289 (1987). Here, the mother had to leave Jessie's House because she used drugs and lost custody of Cali, and she failed to utilize the Section 8 voucher, letting a valuable opportunity to obtain her own housing slip away. The mother's failure to put in the minimal effort needed to call the gas company for a copy of her bill demonstrated her lack of commitment to securing a home that would be appropriate for Cali. Her wilful failure to attend visits likewise demonstrated her lack of commitment to Cali.[6]
The judge's determination of unfitness was based on the above constellation of factors. Considering these factors in their totality, we conclude that they clearly and convincingly establish that the mother is unfit to care for Cali. We further conclude that the judge did not abuse his discretion in finding that termination of the mother's parental rights would be in Cali's best interests. See Adoption of Ilona, 459 Mass. 53, 59 (2011) (best interests determination is reviewed for "clear error of law or abuse of discretion"). Given the mother's demonstrated lack of commitment to Cali, failure to comply with her service plan, and prior history of parental neglect, the judge was justified in finding that the mother's unfitness was not merely temporary. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 60. Cali "deserve[s] permanency and stability" and should not be made to wait indefinitely in the hope that the mother may someday become fit. Nancy, 443 Mass. at 517.
2. Reasonable efforts. "Before seeking to terminate parental rights, the department must make 'reasonable efforts' aimed at restoring the child to the care of the natural parents." Ilona, 459 Mass. at 60, quoting Adoption of Lenore, 55 Mass. App. Ct. 275, 278 (2002). The mother argues that the department failed to make reasonable efforts in two respects.[7] First, she argues that the department did not adequately help her to obtain housing. This argument appears to center around the Section 8 voucher; in particular, while acknowledging that the department offered to pay for part of her gas bill, the mother claims that she "lacked the means to obtain a copy of the bill due to her impoverished circumstances." The mother does not articulate, however, what more the department should have done to assist her. Her failure to follow through with the gas company "cannot be laid at the department's door." Adoption of Gregory, 434 Mass. 117, 123 (2001), quoting Adoption of Paula, 420 Mass. 716, 730 (1995).
Second, the mother argues that the department did not make reasonable efforts to help her with her substance abuse issues. She points specifically to two requests she made for referrals to an in-patient substance abuse program. But both times, the department made the referral. The first time, the program would not accept the mother because she refused to admit that she had a substance abuse problem. The second time, the referral failed because the program wanted a commitment from the department that the mother would be reunified with Cali within thirty days, an assurance that the department could not give because by that time the goal for Cali had changed to adoption. We fail to see how the department acted unreasonably.
3. Visitation. The judge found that there was no evidence of a bond between the mother and Cali and declined to order posttermination visitation. The mother contends that remand is required on this issue because the judge denied her motion to add a witness who "would speak to the issue of bonding." But the mother does not explain why the judge abused his discretion in denying the motion. It is apparent, in any event, that the judge did not abuse his discretion, given the late disclosure of the proposed witness and the admission by the mother's counsel that the testimony would not be "child-specific" as the witness had not actually observed the mother with Cali in nearly two years.
Decree affirmed.

The putative father did not attempt to perfect paternity and did not appeal from the decree terminating his parental rights.

The social worker testified that the mother did not provide the address until one or two months before trial.

The visits were initially held in Springfield but were moved to Worcester to accommodate the mother after she moved there in or around June of 2015.

The mother asserts that transportation issues hampered her ability to attend the visits, but the judge found that she "was frequently late to visits even when she [was] liv[ing] in Worcester."

We will assume, without deciding, that the mother preserved her arguments. We note also that, contrary to her suggestion, a failure by the department to make reasonable efforts is but one factor "in deciding whether a parent's unfitness is merely temporary." Ilona, 459 Mass. at 61. "[E]ven where the department has failed to meet [its] obligation, a trial judge must still rule in the child's best interest." Id.