NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-455

ADOPTION OF DORIS.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother of Doris appeals from a decree entered following a trial in the Juvenile Court that found her unfit and terminated her parental rights.  She contends that the judge erred in finding her unfit and failed to consider all record evidence.  We conclude that the judge's determination of unfitness is supported by the record, as is evidenced by her thoughtful and detailed decision.  Because the finding of unfitness is supported by the record and because termination was in the child's best interests, we affirm.[2]

Background.  The mother does not contend that any of the judge's factual findings are clearly erroneous.  We summarize the facts as found by the judge.  The child was born in 2011.  The mother experienced intimate partner violence with the

---

[1] A pseudonym.

[2] The department did not seek to terminate the father's parental rights, which he retains.

child's father.  The child and the mother first came to the attention of the Department of Families and Children (department) in 2014 after the department received two reports filed pursuant to G. L. c. 119, § 51A, alleging neglect.  Around this same time, the child witnessed a physical altercation between the mother and the maternal grandmother.  After an investigation conducted pursuant to G. L. c. 119, § 51B, the department supported the allegations of neglect based in part on the unsafe condition of the mother's room in a homeless shelter where she and the child lived.  The child was removed by the department for several days while the mother attempted to make her room safe for the child.  Although the child was returned to the mother, the department removed the child later that same year so that the mother could again address her housing situation.  On each occasion, the child stayed with the maternal grandmother.  For the next few years, the mother continued to struggle to provide the child with stable and safe living conditions.[3]

The mother also suffered from continuous substance misuse during the child's early years.  The mother's substance use disorder began when she was herself a teenager.  It continued

---

[3] In the first six years of the child's life, the child and the mother experienced periods of homelessness and lived at five different addresses.  When the mother did have housing, the living conditions were often unsafe.

when, after a sports injury, the mother became dependent on opiates, using them from 2006 onward. The mother later used heroin from 2016 to 2018. The mother's addiction continued even while she engaged in a medically supervised program to safely wean herself off painkillers. While in this program, she sold her prescribed Percocet for money.

In August 2018, the mother received a certificate of achievement from a medical center for her efforts and accomplishments regarding her attendance in a treatment program. However, one month later, despite appearing to have turned a corner, the mother was found in the family home with heroin residue and was involuntarily committed to a substance misuse treatment program. She fully participated in drug treatment for approximately two months and established a support network upon discharge. Despite this progress, upon her discharge to a transitional program the mother did not stay in the program, as she had agreed to, and instead went to live with her boyfriend.

In July 2019, the mother entered another residential drug treatment program, where the department attempted reunification with the child. The child was removed from the mother's care after the mother was arrested for shoplifting, tested positive for amphetamines, and was found to be using multiple prescribers for her medications. For these reasons and for knowingly

3

breaking other program rules, the mother was removed from the program in August 2019.

In September 2019, the mother entered another residential drug treatment program. Because this program did not allow children, the department did not discuss reunification with the mother. While she was in this program, the department changed the goal for the child from reunification to adoption, citing concerns about the length of time the child had been in the department's care and the mother's apparent lack of progress. The mother completed the program and received another certificate of achievement in March 2020 and subsequently moved into her own apartment. After March 2020, the mother participated in family drug court, engaged with a recovery coach, attended AA/NA meetings,[4] and participated in individual therapy.

The department remained concerned about the mother's well-being despite her involvement in treatment because the mother was presenting as "energetic and slightly disorganized." The department was also concerned about the mother's sobriety because she presented as "tired looking." In addition, the department was concerned that the mother had engaged in several unsafe relationships and believed that she was continuing to

---

[4] The judge did not credit the mother's testimony that she had been attending AA meetings since 2018.

4

make unsafe partner choices. On August 23, 2020, the mother was arrested for shoplifting and, in a search incident to arrest, heroin, fentanyl, clonazepam, amphetamines and methamphetamines were found in her purse.

Police responded to several calls regarding domestic violence between mother and her boyfriend on several occasions from July of 2020 to June of 2021. The department had concerns about this man, and mother agreed that he was unsafe. Although mother obtained a restraining order against him and denied being in a relationship with him, she remained in contact with him.

After a six-day trial, the judge found the mother unfit, and concluded that termination of her parental rights was in the child's best interests. The judge approved the department's plan for the maternal grandmother's guardianship of the child and issued a decree terminating the mother's parental rights.

Discussion. The mother's primary argument, that the judge committed error in finding her unfit, rests on three contentions. First, the mother contends that the department did not present sufficient evidence to support the judge's conclusion that the mother failed to gain significant insights from her participation in services. Second, the mother asserts that the judge's finding of unfitness unfairly focused on her past failures and did not consider her recent progress and her current condition. Third, the mother alleges that the judge

5

ignored the mother's commitment to and relationship with the child.  We discuss each of these contentions supporting her argument in turn, reviewing for either "a clear error of law or abuse of discretion" (citation omitted).  Adoption of Talik, 92 Mass. App. Ct. 367, 370 (2017).  Although the mother's arguments all relate to the finding of her unfitness, we also briefly discuss how the record supports the judge's conclusion that termination is in the child's best interests.

1.  Mother's unfitness.  When determining whether the parent is currently unfit, "subsidiary findings of fact must be supported by a preponderance of the evidence, with the ultimate determination of unfitness based upon clear and convincing evidence."  Adoption of Rhona, 63 Mass. App. Ct. 117, 124 (2005), citing Adoption of Daniel, 58 Mass. App. Ct. 195, 201 (2003).  "In order to be clear and convincing, the evidence must be sufficient to convey a high degree of probability that the proposition is true. . . .  The requisite proof must be strong and positive; it must be full, clear and decisive" (quotations and citation omitted).  Adoption of Zoltan, 71 Mass. App. Ct. 185, 188 (2008).  "Clear and convincing proof involves a degree of belief greater than the usually imposed burden of proof by a preponderance of the evidence, but less than the burden of proof beyond a reasonable doubt imposed in criminal cases" (citation omitted).  Custody of Eleanor, 414 Mass. 795, 800 (1993).

a. <u>Lack of insight from services</u>. The judge's conclusion that the mother failed to gain significant insights from her participation in services is supported by the record. See <u>Adoption of Elena</u>, 446 Mass. 24, 32-33 (2006) (determination that "the mother's recent progress at rehabilitation was questionable" was supported by evidence that "the mother had availed herself of services that had been offered, but that she had failed to utilize effectively those services to address issues of drug abuse and domestic violence"). The mother was involved in therapy, addiction services, and domestic violence services. Although we have no doubt that the mother has gained some benefit, it is clear from this record that, as the judge describes, the mother has had a "lack of progress in gaining insight and altering her lifestyle choices." While the mother's completion of her most recent residential drug treatment program and the certificate of achievement she received showed progress, her most recent arrest with drugs found in her purse showed that she had not undergone the kind of significant change that would have been required to lead the judge to believe she had gained meaningful and significant insights from addiction services. Contrast <u>Adoption of Imelda</u>, 72 Mass. App. Ct. 354, 361-362 (2008). Additionally, the evidence that mother was still in contact with her previous partner who had been abusive toward her demonstrated that she did not gain insight from domestic

violence services. See Adoption of Yvonne, 99 Mass. App. Ct. 579-580 (2021) (judge properly considered how failure to address domestic violence affected parenting). For those reasons, we see no abuse of discretion in the judge's conclusion that the mother failed to gain significant insights regarding consistently maintaining her sobriety and altering her unsafe lifestyle choices.

b. Unfitness based on present conditions. "A judge whose order will have the effect of irreversibly terminating the legal parent-child relationship must focus on the present circumstances of the parent and the child, taking into account recent positive gains (if any), and, in appropriate cases, the likelihood of future improvement, in a parent's ability to care for the child who is the subject of the petition." Adoption of Paula, 420 Mass. 716, 731 (1995). "[W]e recognize that relapse is part of recovery." Commonwealth v. Eldred, 480 Mass. 90, 99 (2018). Although evidence of addiction is not alone sufficient to terminate parental rights, "the parent's willingness to engage in treatment is an important consideration in an unfitness determination where the substance dependence inhibits the parent's ability to provide minimally acceptable care of the child." Adoption of Luc, 484 Mass. 139, 147 (2020).

Here, the judge's findings of fact and conclusions of law evidence that the judge not only took into consideration the

8

mother's past actions, but that the judge also evaluated the mother's present condition. The mother being found with heroin in her purse during her recent arrest, in conjunction with her long history of failing to maintain sobriety, support the judge's conclusion that the "[m]other's substance abuse issues have impacted and continue to impact her ability to parent and care for the subject child." While we applaud the mother's efforts to overcome her addiction and get the treatment she needs, her efforts must be viewed against the backdrop of the evidence supporting a long history of unfitness. See Adoption of Katharine, 42 Mass. App. Ct. 25, 32-33 (1997) (judge does not "need to wait for inevitable disaster to happen" and "may consider past conduct to predict future ability and performance"). We also see no abuse of discretion in the judge's determination that this condition is not temporary. See Adoption of Elena, 446 Mass. at 31 ("[A] condition which is reasonably likely to continue for a prolonged indeterminate period, such as alcohol or drug addiction . . . [that] makes the parent . . . unlikely to provide minimally acceptable care of the child is not a temporary condition" [quotation and citation omitted]). The mother's recent criminal history, which directly evidenced her inability to maintain her sobriety and thus provide a consistently safe environment for the child, was also properly considered by the judge. Care & Protection of Quinn,

9

54 Mass. App. Ct. 117, 125 (2002) ("Evidence of the [parent's] criminal record, to the extent that it had a bearing on [their] fitness as a parent, is germane in care and protection proceedings"). Additionally, although a lack of housing cannot alone justify a finding of unfitness, see Adoption of Linus, 73 Mass. App. Ct. 815, 821 (2009), the judge properly considered the mother's inability to consistently provide safe housing for the child. See Adoption of Anton, 72 Mass. App. Ct. 667, 676 (2008). The judge also gave the proper weight to the violent altercation witnessed by the child between the mother and the maternal grandmother as well as the mother's multiple unsafe partners. See Custody of Vaughn, 422 Mass. 590, 599 (1996) ("It is well documented that witnessing domestic violence, as well as being one of its victims, has a profound impact on children"). In total, the judge's findings evidence consideration of both the mother's past actions and present condition in assessing her future unfitness. We discern no abuse of discretion or clear error.

c. Mother's relationship with the child. Contrary to the mother's claim, the judge considered the mother's commitment to and relationship with the child. Among other factors, the judge may consider the child's existing bonds with the biological parent. See Adoption of Lenore, 55 Mass. App. Ct. 275, 283-284 (2002). Throughout the findings of facts and conclusions of

10

law, the judge points out many factors weighing in the mother's favor, such as the "[m]other has largely cooperated with the [d]epartment while engaging in services," and the "[m]other has maintained meaningful contact with the subject child and has engaged in services on her action plan tasks."  In relation to the mother's bond with the child, the judge stated that "[t]he child has a bond with mother," but ultimately found that "the child has developed a strong bond with her caretaker for the last two plus years, her maternal grandmother."  The findings of fact and conclusions of law evidence not only that the judge carefully considered the mother's commitment to and relationship with the child, but also gave those factors weight in her deliberations before determining the mother's unfitness.  In summary, the judge's findings evidence that the determination of the mother's unfitness was based on a "constellation of factors."  Adoption of Greta, 431 Mass. 577, 588 (2000).

2.  Child's best interests.  "We give substantial deference to a judge's decision that termination of a parent's rights is in the best interest of the child, and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion."  Adoption of Ilona, 459 Mass. at 59.  "[T]he best interests analysis . . . requires a court to focus on the various factors unique to the situation of the individual for whom it must act."  Custody of a Minor, 375

11

Mass. 733, 753 (1978). "The parental fitness test and the best interests of the child test are not mutually exclusive, but rather reflect different degrees of emphasis on the same factors" (quotation and citation omitted). Adoption of Rhona, 57 Mass. App. Ct. at 490. Here, the judge thoughtfully considered the mother's "ability, capacity, fitness and readiness," G. L. c. 210, § 3 (c), before deciding whether the department's proposed plan of guardianship by the maternal grandmother was in the best interests of the child. She examined the mother's criminal history, her substance abuse history, and her history with domestic violence before determining that termination of the mother's parental rights was in the child's best interests. The judge also, as previously discussed, considered the child's relationship with both the mother and the maternal grandmother before deciding the department's plan was in the child's best interests. The record evidence amply supports the judge's findings and determination that termination of the mother's parental rights was in the child's best interests.

Conclusion. After a thorough review, we discern no abuse of discretion or clear error in the judge's decision.

12

For that reason, we affirm.

Decree affirmed.

By the Court (Blake, Walsh &
  Hershfang, JJ.[5]),

*Joseph F. Stanton*

Clerk

Entered:  July 19, 2023.

---

[5] The panelists are listed in order of seniority.