# ADOPTION OF ZOLTAN.[1]

No. 07-P-1217.

Berkshire. December 4, 2007. - February 7, 2008.

Present: DUFFLY, GREEN, & MEADE, JJ.

*Adoption,* Dispensing with parent's consent. *Parent and Child,* Dispensing with parent's consent to adoption.

Discussion of the standard of review applicable in a proceeding to dispense with a parent's consent to the adoption of her minor child. [187-188]

In a proceeding to dispense with the mother's consent to the adoption of her minor child, the judge's subsidiary findings of fact and the evidence did not adequately support her ultimate conclusion of current parental unfitness, where the facts of the child's head injury, the mother's admitted prior marijuana and alcohol use, the mother's alleged anger management issues, and the mother's failure to complete all tasks required by her service plan fell short of demonstrating by clear and convincing evidence grievous shortcomings or handicaps that placed the child's welfare much at hazard [188-193]; further, at a review and redetermination proceeding, the judge's subsidiary findings and the evidence did not support her determination that the mother continued currently to be unfit, and that termination of her parental rights was in the child's best interests, where the only new evidence on the mother's fitness related to her supervised visits with the child (which evidence was overwhelmingly positive and not demonstrative of unfitness) and her efforts to comply with the requirements of her service plan (which did little to establish that she was unfit), and where the only evidence to support the conclusion that termination was in the child's best interests, other than the positive information concerning the mother's supervised visits and her failure to comply more fully with service plan requirements, was the strengthening of bonds between the child and the foster parent, which, in the absence of other evidence of unfitness, could not justify the extreme step of permanently separating the mother from her child [193-196].

PETITION filed in the Berkshire County Division of the Juvenile Court Department on February 18, 2005.

The case was heard by *Judith A. Locke,* J.

[1] A pseudonym.

*Patricia Quintilian* for the mother.

*David Hadas*, Assistant Attorney General, for Department of Social Services.

*Azizah P. Yasin* for the child.

MEADE, J. The mother appeals from a decree of a Berkshire County Juvenile Court judge dispensing with consent to the adoption of her minor child. She argues that the evidence and the judge's subsidiary findings do not adequately support the conclusions that the mother is currently unfit to parent the child and that termination of her parental rights is in the child's best interests. We agree and vacate the decree allowing the petition to dispense with consent to adoption.

1. *Background.* Zoltan, who was born in 2004, first came to the attention of the Department of Social Services (department) on September 2, 2004, when an anonymous reporter called the department alleging that the mother was using marijuana and drinking alcohol while leaving her son in her own mother's (maternal grandmother) care. Pursuant to this G. L. c. 119, § 51A, report, which was supported, G. L. c. 119, § 51B, the department opened the case for services. The mother admitted to using marijuana and alcohol at times when the child was not in her care, but denied that the maternal grandmother was unfit to watch the child.[2] An assessment worksheet prepared by an experienced department social worker indicated that, during the course of the family's receipt of services, the worker "had not seen evidence that a drug problem was interfering with [the mother's] care or parenting of her son" and that she "appeared to be able to provide adequate daily care to her son."

On February 18, 2005, two G. L. c. 119, § 51A, reports were filed stating that the mother, accompanied by the maternal aunt, the maternal grandmother, and the maternal grandmother's boyfriend, had brought the child to the Berkshire County Hospital emergency room with swelling of the head. The reports alleged that some or all of the adults appeared to be inebriated and that the accounts offered by the adults for how the child's injury had occurred were inconsistent with one another and with the child's

---

[2]At age five, the mother had been removed from the maternal grandmother's care for a period of three months while the maternal grandmother sought treatment for alcohol abuse.

injury. Based on these reports, the department filed a care and protection petition pursuant to G. L. c. 119, § 24, alleging neglect of the child for physical abuse committed by an unknown perpetrator. Following a hearing on February 25, 2005, the department took temporary custody of the child and placed him in foster care.

On June 29, 2006, and July 21, 2006, a trial on the petition to dispense with consent to adoption was held. On September 1, 2006, the judge found the child in need of care and protection and the mother currently unfit to assume parental responsibility. The judge, however, also found that the department had not established that termination of parental rights was in the child's best interests, or that there was a nexus between the mother's prior drug use and her inability to safely parent her child. The judge ordered that a review and redetermination hearing be held within six months in order to "reevaluate [the mother's] commitment to her child and the level of maturity based on [the] level of compliance with her service plan and her ability to remain free from drugs and alcohol."

Following the review and redetermination hearing held on March 27, 2007, the judge terminated the mother's parental rights, and a decree entered on that date. The judge then issued findings of fact, conclusions of law, and an order on April 30, 2007. The mother appeals.

2. *Discussion.* a. *Standard of review.* Parents enjoy a fundamental liberty interest in the care, custody, and management of their children, an interest that does not simply extinguish when they become less than model caretakers. See *Santosky* v. *Kramer*, 455 U.S. 745, 753 (1982); *Care & Protection of Erin*, 443 Mass. 567, 570 (2005). Indeed, the decision to terminate parental rights is among the most solemn responsibilities entrusted to judges. See *Adoption of Abby*, 62 Mass. App. Ct. 816, 823 (2005). In order to justify this extraordinary exercise of State power, the department must prove by "clear and convincing evidence that a parent is currently unfit to further the child's best interest[s]." *Adoption of Katharine*, 42 Mass. App. Ct. 25, 27 (1997). In this context, "[p]arental unfitness . . . means more than ineptitude, handicap, character flaw, conviction of a crime, unusual life style, or inability to do as good a

job as the child's foster parent. Rather, the idea of 'parental unfitness' means 'grievous shortcomings or handicaps' that put the child's welfare 'much at hazard.' " *Id.* at 28, quoting from *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631, 646 (1975) (footnotes omitted). In determining parental unfitness, the issue is not "whether the parent is a good one, let alone an ideal one; rather, the inquiry is whether the parent is so bad as to place the child at serious risk of peril from abuse, neglect, or other activity harmful to the child." *Care & Protection of Bruce*, 44 Mass. App. Ct. 758, 761 (1998).

In order to be clear and convincing, the "evidence must be sufficient to convey 'a high degree of probability' that the proposition is true. . . . The requisite proof must be strong and positive; it must be 'full, clear and decisive.' " *Adoption of Rhona*, 57 Mass. App. Ct. 479, 488 (2003), quoting from *Adoption of Iris*, 43 Mass. App. Ct. 95, 105 (1997). "Clear and convincing proof involves a degree of belief greater than the usually imposed burden of proof by a preponderance of the evidence, but less than the burden of proof beyond a reasonable doubt imposed in criminal cases." *Custody of Eleanor*, 414 Mass. 795, 800 (1993), quoting from *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 871 (1975). "Appellate review in custody appeals is not done to assess the evidence de novo, but rather to determine whether the judge's findings were clearly erroneous and whether they proved parental unfitness by clear and convincing evidence." *Custody of Eleanor*, *supra* at 802.

b. *September, 2006, determination of parental unfitness.* The mother argues that the judge's subsidiary findings of fact and the evidence do not adequately support her ultimate conclusions by the requisite standard of clear and convincing proof.[3] We agree. It is evident from the judge's findings that the September,

---

[3]The mother also challenges a number of the judge's findings as clearly erroneous. "However, we need not undertake consideration of the record support for each of the findings because we conclude that, taken as a whole, the judge's subsidiary findings, even if supported by the evidence, do not support her ultimate conclusions that the mother is currently unfit to parent the child and that termination of her parental rights was in the child's best interests." *Adoption of Yale*, 65 Mass. App. Ct. 236, 240 (2005). Similarly, because of our conclusion on the central issues, we do not reach the mother's claim that

2006, determination of parental unfitness was based on the child's head injury, the mother's admitted prior marijuana and alcohol use, her alleged anger management issues, and her failure to complete all tasks required by her service plan. Although far from indicators of parental excellence, those facts fall short of the "grievous shortcomings or handicaps [placing] the child's welfare much at hazard," *Adoption of Katharine, supra* at 28, quoting from *Petition of the New England Home for Little Wanderers, supra* at 646, which must be shown by clear and convincing evidence in order to support the "grave conclusion" of parental unfitness. *Adoption of Katharine, supra* at 27. Indeed, "the central judgment does not concern the [mother's] merits or demerits, but whether, in all the circumstances . . . [s]he has the capacity to act as a fit parent." *Adoption of Nicole*, 40 Mass. App. Ct. 259, 262 (1996).

There is no dispute that while the mother was the child's primary caretaker, the child suffered a serious head injury, the cause of which was not adequately explained. Although one might speculate that such an injury might be attributed to the mother's negligent supervision of the child, such conjecture is not a substitute for the evidence necessary to show parental unfitness.[4] See *Adoption of Iris, supra* at 104-105 (without more, evidence of child's single unexplained head injury does not establish parental unfitness); *Adoption of Abby*, 62 Mass. App. Ct. at 824-825 (unexplained serious physical injuries that were consistent with abuse were insufficient to establish unfitness of primary caretaker-parent, where they were not shown to be attributable to parent's abuse or neglect).

On the record before us, we fail to see how the child's head injury proves any serious parental shortcomings. The judge did not find that the injury was caused by abuse or neglect (nor would the evidence have supported such a finding), or that the mother's response to the injury was improper. Indeed, the record reflects that upon discovering the injury, the mother took the child to the emergency room and offered an explanation as to

the judge erred by striking the court investigator's report of March 2, 2007.

[4]If it were, the fitness of any parent whose child suffers an accidental injury could be called into question without regard to whether the accident was actually the result of improper supervision.

how the injury, which she did not witness, might have occurred. That her explanation was ultimately deemed inconsistent with the child's injury, as well as with the "stories" offered by the other adults, does not establish parental fault.[5] Without more, the mother's ignorance as to the cause of the injury does not reflect the "grievous shortcomings" that must underlie a finding of parental unfitness. *Adoption of Katharine*, 42 Mass. App. Ct. at 28, quoting from *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. at 646. See *Adoption of Iris*, 43 Mass. App. Ct. at 99 (parental unfitness not established despite medical determination that parents' explanation of how injury might have occurred was not consistent with the child's injuries). The evidence presented by the department was "not strong and left too much to speculation for the judge to conclude that the mother was the perpetrator or was negligent in her supervision." *Adoption of Rhona*, 57 Mass. App. Ct. at 485. Indeed, the findings fail to describe in any detail the specific acts or omissions by which the mother may be faulted for the child's injury. Without any such properly supported findings, the isolated head injury suffered by the child does not establish parental unfitness.

Similarly, the mother's admitted prior marijuana and alcohol use, by itself, does not significantly affect the issue of parental fitness as measured by the controlling statute. Under G. L. c. 210, § 3(*c*)(xii), "alcohol or drug addiction" is a factor a judge may consider when "the condition makes the parent . . . unlikely to provide minimally acceptable care." However, when that connection cannot be made, such a condition has only limited significance to a determination of parental unfitness. See *Adoption of Katharine*, *supra* at 34 ("In the absence of a showing that a cocaine-using parent has been neglectful or abusive in the care of that parent's child, we do not think a cocaine habit, without more, translates automatically into legal unfitness to act as a parent"); *Adoption of Rhona*, *supra* at 484 (parent's drug and alcohol use and unexplained injuries to child

---

[5]That none of the adults knew the exact cause of the child's injury does not, by itself, establish abuse or neglect. Moreover, the judge did not find that the mother or any of the other adults had attempted to conceal the true cause of the child's injury.

insufficient to establish parental unfitness where no link was shown between the two); *Adoption of Yale*, 65 Mass. App. Ct. 236, 241 (2005) ("even if the mother has engaged in occasional drug use . . . there is absolutely no indication in the record that any drug use has adversely affected her ability or fitness to parent the child").

Here, nothing in the judge's findings draws a connection between the mother's admitted prior drug and alcohol use and the child's injury, or some other failure to provide minimally acceptable care. The judge did not find that the mother was inebriated when the child suffered the head injury, nor would such have been supported by the evidence.[6] Indeed, the judge correctly found that the department "has not shown the nexus between [the mother's] past use of marijuana and her inability to safely parent her child." Notwithstanding that, the judge determined the mother to be currently unfit. Without a showing that the mother's drug and alcohol use rendered her unable to provide minimally acceptable care for her child, that determination was untenable. Compare *Adoption of Elena*, 446 Mass. 24, 32 (2006) (where "judge made detailed findings about the mother's longstanding involvement with drugs and the effect this had on the children. She took drugs in the presence of the children, left them in the care of addicts, and engaged in sex for drugs in the presence of her children").

Nor do we think the mother's alleged anger management issues to be significantly supportive of the determination of unfitness. "It is not enough to state that a parent has a particular condition without detailing the ways in which that condition renders the parent unfit." *Care & Protection of Ian*, 46 Mass. App. Ct. 615, 617 n.4 (1999). Here, no effort has been made to link the mother's alleged anger management problem to inadequate parenting, nor would the evidence on the record before us support such an effort. None of the workers or reporters in this case has indicated

---

[6]The judge found that the notes of the treating physician indicated only that the maternal grandmother's boyfriend "seemed a little intoxicated"; they made no such representation about the mother. Particularly in light of the treating physician's having made no mention of the mother, the generalized observation contained in one of the § 51A reports that "all of the adults were inebriated" is insufficient to establish that the mother was intoxicated. See *Custody of Michel*, 28 Mass. App. Ct. 260, 266-267 (1990).

that the mother ever directed any anger toward her child.[7] Rather, the evidence concerning the mother's anger management issues was confined to two incidents in which she became upset and yelled at hospital and department workers, expressing her frustration with department involvement and her separation from her son. Without resorting to impermissible conjecture, these isolated incidents shed little light on the mother's ability to provide minimally acceptable care for her son, and offer no basis for concluding that the child's welfare was put "much at hazard" by the mother's alleged anger issues. See *Adoption of Katharine*, 42 Mass. App. Ct. at 28, quoting from *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. at 646. Cf. *Adoption of Leland*, 65 Mass. App. Ct. 580, 587 (2006) (where concerns regarding father's alleged propensity for violence derived from incidents that occurred when father was adolescent, "the father's failing to undergo the domestic violence evaluation [required by his service plan] . . . shed little light on his parental fitness").

Lastly, given the absence of any clear and convincing evidence of parental unfitness, the mother's failure to comply more fully with the requirements of her service plan cannot be a significant basis for the determination of parental unfitness. "[F]ailure to follow service plan tasks and visitation schedules may be relevant to determining parental unfitness . . . ." *Id.* at 585. However, failure to comply with the department's service plan is less important where the tasks in the plan are not closely related to any clearly identified parental deficiencies. See *Adoption of Yale*, 65 Mass. App. Ct. at 242 ("in the absence of serious concern that the mother is in fact using drugs, we are hard pressed to place great significance, much less dispositive weight, on a requirement routinely imposed by the department that the mother submit to random urine screens"); *Adoption of Leland*, *supra* at 585-586 ("it is not clear here why certain tasks were required of the father and, more importantly, how the tasks relate to his fitness as a parent"). Given the lack of any clearly established parental shortcomings which needed to be rectified

---

[7]To the contrary, the department worker who cited substance abuse and anger issues as the mother's principal problems testified that she never saw the mother direct any anger toward her son.

Adoption of Zoltan.

in order for the mother to be able to provide minimally acceptable care, this criticism adds little to the issue of the mother's fitness.[8]

Moreover, the record reflects that while working full-time and securing appropriate housing for herself and her son, the mother made significant efforts to productively use services and was substantially compliant with the various requirements contained in her service plan.[9] She was consistent in attending supervised visits,[10] which were "overwhelmingly positive and [included] many expressions of love and affection" between the mother and her child. Our review of the record and the judge's findings leads us to conclude that the department did not meet its "heavy" burden of proving "current unfitness by clear and convincing evidence." *Care & Protection of Elaine*, 54 Mass. App. Ct. 266, 271 (2002).

c. *The review and redetermination decision.* We also conclude that the April 30, 2007, review and redetermination decision that the mother continued to be currently unfit, and that termination of her parental rights was in the child's best interests, was not adequately supported by the judge's subsidiary findings and the evidence. At the hearing on this matter, the only new evidence bearing on the mother's fitness related to her supervised visits with the child and her efforts to comply with the requirements of her service plan. The evidence concerning the visits was overwhelmingly positive, and not demonstrative of unfitness.[11] The visit supervisor's reports, which were admitted in evidence,

[8]The mother was deemed noncompliant with her service plan primarily due to her failure to attend NA or AA meetings or to complete drug screens. Because drug and alcohol use was not shown to be connected with an inability to provide adequate care for her child, we think any failure to comply with such requirements has a limited significance to the issue of this mother's parental fitness.

[9]The judge found that she had completed nine of twelve anger management classes, engaged in a parental fitness evaluation, attended both group parenting classes and individual therapy, and attended a meeting regarding substance abuse therapy.

[10]As of the end of the first hearing, the mother had missed only one scheduled visit.

[11]Though she missed two scheduled visits in January, 2007, the mother apologized for these lapses and explained that she had been affected by anxiety for which she had since received help. Where her interactions with the child were so overwhelmingly positive both before and after these two missed visits, we think this slight misstep to be of little consequence.

bespeak a loving mother-child relationship and consistently appropriate behavior by the mother.[12]

With respect to the other major criticism of the mother at the hearing, again her failure to comply more fully with the requirements of her service plan does little to establish that she is unfit to provide minimally acceptable care for her child. More importantly, we note that the mother cannot fairly be faulted for failing to complete additional drug screens where she has not failed to submit to any drug screens provided by the department. The contention that the mother, who obtained a clean drug screen on her own initiative and at her own personal expense, was required to provide numerous such screens, overstates the conditions actually imposed.[13]

The mother also claims that there was insufficient evidence that the child's best interests would be served by a termination of parental rights. We agree. When a parent is adjudged currently unfit, a decree dispensing with consent to adoption may not issue without a determination that "the parent's unfitness to assume parental responsibility is such that it would be in the best interests of the child for all legal relations to be ended." *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 391 Mass. 113, 119 (1984). "The tests of the child's best interests and parental fitness 'are not separate and distinct, but cognate and connected.' " *Adoption of Vito*, 47 Mass. App. Ct. 349, 352 (1999), quoting from *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. at 641.

Here, the September 1, 2006, decision expressly states that "[t]he [d]epartment has not met its burden by clear and convinc-

---

[12]For example, these reports indicate that she consistently brought appropriate snacks and activities for the child, exchanged numerous expressions of love and affection with him, and was attentive, nurturing, and sensitive to his emotional needs and safety.

[13]The September, 2006, decision instructed that the "[m]other must attend and submit to all drug screenings, including both random and scheduled testing." However, this language placed no burden on the mother to procure drug tests not provided by the department. Indeed, it escapes us how the mother can be criticized for failing to schedule her own *random* drug tests. We express no view as to whether the department may require a parent to provide drug screens at her own expense, but note merely that the mother's service plan included no such requirement.

ing evidence that the subject child's best interests will be served by permanently severing [the mother's] parental rights." Moreover, the judge found at that time that none of the applicable factors set forth in G. L. c. 210, § 3(*c*), had been proved.[14] Apparently in reliance on *Adoption of Carlos*, 413 Mass. 339, 344, 350 (1992),[15] however, the judge stayed the department's petition to terminate parental rights, stating that she was "granting [the mother] a period no longer than six months, to find herself in complete compliance with her service plan and remain drug and alcohol free."

However, there is no sufficient basis in the record to support the judge's April 30, 2007, determination that the child's best interests would be served at that time by termination of the mother's parental rights. Indeed, other than the overwhelmingly positive information concerning the mother's supervised visits, and her failure to comply more fully with service plan requirements, the only significant changed circumstance cited by the judge was the strengthening of bonds between the child and the foster parent. But that bond, in the absence of other evidence of unfitness, cannot justify the extreme step of permanently separating the mother from her child. See *Adoption of Rhona*, 57 Mass. App. Ct. at 492 ("The bonding of children with their foster parents cannot be the dispositive factor in these cases because the very fact of placing a child in foster care during judicial proceedings would in every case determine the outcome of those proceedings").

Furthermore, in these circumstances it was error for the judge

[14]General Laws c. 210, § 3(*c*), lists fourteen nonexclusive factors that a judge shall consider, to the extent they are relevant, when determining whether the child's best interests require dispensing with the parent's consent to adoption. In her September 1, 2006, conclusions of law, the judge expressly found: "[the] following factors under [G. L. c.] 210 § 3 are not applicable to the instant petition: i, iv, ix, x, xi, xiii, and xiv. . . . The [d]epartment has not proved by clear and convincing evidence the following factors . . . : ii, iii, v, vi, vii, vii [*sic*], and xii." Assuming that the second mention of the seventh factor was intended to be a reference to the eighth factor, the trial judge thus expressly found that none of the applicable § 3(*c*) factors had been proved by clear and convincing evidence.

[15]In that case, the Supreme Judicial Court impliedly approved postponing final judgment in G. L. c. 210 cases to permit posttrial review and reconsideration of parental fitness and the child's best interests. See *Adoption of Carlos*, 413 Mass. 339, 350 (1992).

to have relied on the bond, and the effect that severance of it would have on the child, without including specific and detailed "findings to describe the nature of the bonds formed, why serious psychological harm would flow from the severance of those bonds, what means to alleviate that harm had been considered, and why those means were determined to be inadequate." *Adoption of Katharine*, 42 Mass. App. Ct. at 30-31. See *Adoption of Abby*, 62 Mass. App. Ct. at 828, quoting from *Adoption of Katharine*, *supra* at 30 (conclusory finding that child would be traumatized by separation from her foster parents, "while supportable, does not suffice to meet the standards that are required if severance of bonds is to be 'a decisive factor' in termination of parental rights").

3. *Conclusion*. "While [the child's] welfare and best interests were undoubtedly the central focus of both the judge and the department in their desire to spare [him] the risk of further injury, good intentions and genuine concern are not a satisfactory substitute for clear and convincing evidence." *Adoption of Abby*, *supra*. The decree allowing the petition to dispense with consent to adoption is vacated. The case is remanded for further proceedings consistent with this opinion including reinstating forthwith the mother's supervised visitation and determining whether the department's goal remains the termination of parental rights.

If the department's goal so remains, the judge shall determine whether the department has sufficient additional evidence of the mother's unfitness to warrant a new trial, and if so, the judge shall proceed promptly to trial consistent with this opinion. If a new trial is not warranted or if the department's goal has changed, a plan for the reunification of the mother and her child under appropriate terms and conditions, taking into account the best interests of the child in regard to the method and timing of such transfer, shall be devised and implemented with judicial oversight and approval.

*So ordered.*