NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-765

ADOPTION OF TONI (and two companion cases[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial in the Juvenile Court, the judge issued decrees finding the mother unfit to assume parental responsibilities for the three children -- Toni, Amy, and Eric -- terminated her parental rights, approved the adoption plan proposed by the Department of Children and Families (department), and declined to order posttermination and postadoption visitation.  The mother appeals.  She argues that the judge abused his discretion by admitting certain expert testimony.  She also argues that the department did not make reasonable efforts toward reunification and that the finding of unfitness was not supported by clear and convincing evidence. We affirm.

---

[1] Adoption of Amy and Adoption of Eric.  The names of the children are pseudonyms.

Background.  The department's involvement with the mother dates to the birth of the oldest child in 2008.  Between 2008 and 2018, the department received twelve reports pursuant to G. L. c. 119, § 51A (51A report), alleging that the parents had misused substances and neglected the children.[2]  Over the years, several of these reports were screened in and the department provided the mother with services.  Namely, in March 2018, a 51A report alleged that the mother fell asleep in a clinic with her head resting on the youngest child, then a baby, whose cries did not wake the mother.  The subsequent investigation, which supported the 51A report, revealed that the mother tested positive for oxycodone and benzodiazepines.  In April 2018, another 51A report alleged neglect of all three children after the mother arrived at a school that Toni and Amy did not attend and attempted to pick them up.  The mother appeared to be intoxicated; she later admitted to using oxycodone and marijuana that day.  After the department's investigation supported the 51A report, the department filed a care and protection petition pursuant to G. L. c. 119, § 24, and removed the children from the mother's custody.

Although the children's permanency plan originally called for reunification, the goal changed to adoption in 2019.  During

_____

[2] The father passed away in 2018.

2

this time, the mother failed to fully comply with her family action plans. Notably, the mother continued to use marijuana and prescription drugs and minimized her substance misuse. The mother also failed to address her mental health challenges by failing to meaningfully participate in therapy. Although the mother saw an individual therapist for a time, she was discharged from the practice in December 2022 for missing appointments and failing to fully engage. As of the time of trial, the mother had not seen a therapist since 2022.

Meanwhile, the three children lived in a temporary kinship placement. The department found a preadoptive family in Massachusetts; however, that family ultimately elected not to adopt the three siblings. In 2021, the department identified a family in New York that was willing to adopt all three children. The department moved the children to New York to be placed with the preadoptive family, and thereafter notified the mother by text message of the move.

The children have thrived in their current placement, and the preadoptive parents have demonstrated their ability to address and care for the children's special needs.[3] The two

---

[3] The oldest child was diagnosed with posttraumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), and depression. The middle child was diagnosed with PTSD, ADHD, and a mood disorder. The youngest child has autism, ADHD, and a speech impediment.

older children, aged fifteen and thirteen, respectively, at the time of trial, have expressed a consistent desire to remain with their preadoptive family and to be adopted. After moving to New York, the children visited the mother once per month in Massachusetts. The visits often did not go well. The mother sometimes arrived late, and visits frequently ended early. The oldest child refused visits outright after the mother asked how old she was. Although the younger two children vacillated about whether they wished to visit with the mother, all three children at various times refused visits.

In 2021, the mother petitioned for review and redetermination (R&R) pursuant to G. L. c. 119, § 26. The first R&R best interests trial ended in a mistrial. Shortly before the second trial, the mother filed an abuse of discretion motion, arguing that the department failed to make reasonable efforts at reunification. See Care & Protection of Rashida, 488 Mass. 217 (2021), S.C., 489 Mass. 128 (2022). The judge allowed the motion in November 2023, although the mother never sought a continuance to allow the parties time to affect a reunification. After trial that began in December 2023 and concluded in January 2024, the judge issued rulings and orders determining that the department had made reasonable efforts and decrees terminating the mother's parental rights. The mother appeals.

4

Discussion. 1. Expert testimony. The mother argues that the judge abused his discretion by qualifying what she described as an undisclosed expert witness who testified for the department. On the final day of trial, the department called a court clinician as a witness. Although the department included the court clinician on its witness list, it did not identify the court clinician as an expert. The department did not provide the mother with the court clinician's curriculum vitae or define which areas she would opine on as an expert. See Rule 15(B) of the Juvenile Court Rules for the Care and Protection of Children (2018). The judge previously appointed the court clinician to conduct a parenting evaluation and substance use evaluation and ultimately qualified her as an expert in these matters, over the mother's objection. The mother argues that the court clinician's expert testimony prejudiced her.

The judge has discretion to admit an untimely expert opinion. See Kace v. Liang, 472 Mass. 630, 637 (2015). "The extreme sanction of a new trial requires both surprise and unfair prejudicial harm." Hammell v. Shooshanian Eng'g Assocs., Inc., 73 Mass. App. Ct. 634, 638 (2009). Several factors undercut the mother's claim of unfair prejudice. First, the mother never sought a continuance to prepare a cross-examination of the court clinician. See id., citing Beaupre v. Cliff Smith & Assocs., 50 Mass. App. Ct. 480, 486 (2000) (failure to seek

5

continuance undercuts claim of prejudice). Second, the mother was on notice that the court clinician would testify to the contents of her reports, given that the mother moved in limine to exclude the 2020 report, and the court clinician's expert testimony was offered in lieu of the 2023 report itself. See Hammell, supra (party was on notice that substance of expert's opinion was at issue in case). Third, none of the findings that the judge derived from the court clinician's expert testimony are outcome determinative.

As posited by the court clinician, the judge found that substance misuse recovery means total abstinence rather than a harm reduction approach. The mother challenges this finding. Relatedly, the court clinician testified that the mother's continued use of marijuana did not show a meaningful recovery from substance misuse. The record is replete with evidence amounting to the same. For example, the court clinician recommended in her 2020 report, which was admitted in evidence, that the mother abstain from all mood-altering substances. The mother's substance misuse treatment provider recommended the same. The mother also challenges the finding based on the court clinician's testimony that she "did not believe Mother could effectively parent three, high needs children without full abstinence or recovery from those substances she has historically abused." This finds ample support in the record.

6

The 51A report filed in April 2018 described an incident in which the mother arrived at the wrong school, trying to pick up her child, and appeared to be under the influence of substances. The mother admitted to using opioids and marijuana that day. Beyond this incident, the mother admitted in a court interview that she would not be able to take care of the youngest child with marijuana in her system. The mother argues that these reports were stale, but this is belied by record evidence that the mother's toxicology screen were regularly positive for marijuana leading up to the trial. Regardless, the judge was entitled to consider all relevant evidence pertaining to unfitness. See Adoption of Katharine, 42 Mass. App. Ct. 25, 32-33 (1997) (judge may consider past conduct to predict future parental fitness). There was no prejudice.[4]

2. Reasonable efforts. "Before seeking to terminate parental rights, the department must make 'reasonable efforts' aimed at restoring the child to the care of the natural parents." Adoption of Uday, 91 Mass. App. Ct. 51, 53 (2017), quoting Adoption of Ilona, 459 Mass. 53, 60 (2011). The mother argues that the department failed to make reasonable efforts to reunify the family. Specifically, she underscores that the

---

[4] The mother also challenges two findings that relate to her minimization of the extent of her substance misuse. These findings likewise are supported elsewhere in the record.

7

judge concluded the department had redressed their lack of reasonable efforts just two months after he allowed the mother's abuse of discretion motion. See Care & Protection of Rashida, 488 Mass. at 219-221. The mother argues that the department could not have overcome their reasonable efforts deficit in a two-month span. This is not ultimately dispositive.

Although the department must make reasonable efforts, its "obligation to work with the mother was contingent upon her own obligation to fulfill various parental responsibilities, including seeking and utilizing appropriate services" (citation omitted). Adoption of Daisy, 77 Mass. App. Ct. 768, 782 (2010), S.C., 460 Mass. 72 (2011). In other words, "[t]he mother's failure cannot be laid at the department's door." Adoption of Paula, 420 Mass. 716, 730 (1995). Over the course of five years, the mother did not fulfill her responsibility to engage in services to become fit to parent the children. Although the mother had previously engaged in individual therapy, she was discharged from therapy in December 2022 and did not participate in therapy thereafter. This casts doubt on her argument that the department's failure to provide family therapy contributed to the breakdown. See Adoption of Daisy, 77 Mass. App. Ct. at 782 ("While we do not condone the department's lapses in securing appropriate therapy for Daisy, or discount the possibility that they played a role in escalating the

8

deterioration of the relationship between Daisy and her mother, the mother's own delay in obtaining appropriate therapy for herself undermines the mother's argument").  The mother also did not make an effort to have meaningful contact with the children during visits, nor did she fully engage with the department's social workers.  By the time the judge allowed the mother's abuse of discretion motion, the mother's relationship with the children had already suffered a material breakdown.

The mother compounded the problem by waiting until the eve of trial to raise the issue of reasonable efforts, and by not seeking a continuance of the trial after the judge allowed her abuse of discretion motion.  By this point, the children had bonded with their preadoptive family and all three children had at various times refused visits with the mother.  And the children refused to participate in family therapy.  Compare Adoption of Daisy, 77 Mass. App. Ct. at 783 ("[the department] was not in a position to force an eleven year old child to attend visits against her will").

"[T]he proper focus of termination proceedings is the welfare of the child."  Adoption of Gregory, 434 Mass. 117, 121 (2001).  The older two children expressed a consistent desire not to be reunited with the mother and to be adopted by their preadoptive family.  See Adoption of Chad, 94 Mass. App. Ct. 828, 840 n.22 (2019) ("the law presumes [a twelve-year-old

9

child] is competent to express where his best interests lie"). The children have thrived under the care of the preadoptive parents, who have demonstrated they are able to address the needs of the three children. Although we do not condone the department's failure to promptly notify the mother before moving the children out of State, the judge did not abuse his discretion in concluding that the department had made reasonable efforts.

3. Unfitness. The mother challenges multiple findings and conclusions as clearly erroneous and argues that the ensuing conclusion that she is unfit was not supported by clear and convincing evidence. Specifically, the mother contends that the evidence did not establish a nexus between her use and harm to the children. We are not persuaded.

The nexus argument is flawed for two reasons. The mother points out that the judge did not find that the mother was using prescription opioids at the time of trial. But the judge properly considered the mother's past conduct in determining her current and future parental fitness. See Adoption of Katharine, 42 Mass. App. Ct. at 32-33. Second, the record is replete with evidence of the detrimental impact of the mother's substance use on the children. The youngest child was born substance exposed in 2017. The two 51A reports that precipitated the department's involvement in 2018 involved the mother's substance misuse. The

mother testified at trial that marijuana use inhibited her ability to parent her youngest child and that one moment of distraction could cause him to be injured. See id. at 32 ("judges . . . need [not] wait for inevitable disaster to happen"). The mother consistently tested positive for marijuana in the months before trial and admitted to using marijuana a week before trial. We discern no abuse of discretion or error of law in the judge's findings and conclusions regarding the mother's unfitness.

This is not a case where "admitted prior marijuana . . . use, by itself, does not significantly impact the issue of parental fitness." Adoption of Zoltan, 71 Mass. App. Ct. 185, 190 (2008). See G. L. c. 94G, § 7 (d). The mother has a long history of misusing opioids and benzodiazepines. Regardless, the mother admitted that her use of marijuana hurt her children. There was no error or abuse of discretion.

Lastly, the mother argues that the judge failed to connect the mother's "sedation" to substance misuse. The mother admitted that she could not parent her youngest child "while inhibited or sedated." Elsewhere, the mother reported to a substance misuse treatment provider that her perceived sedation was caused by a peak in her methadone dose. Regardless, the

11

mother's sedation was one of many factors the judge considered in concluding that the mother's substance misuse posed a risk of harm to the children.

                                    Decrees affirmed.

                                    By the Court (Blake, C.J.,
                                      Meade & Englander, JJ.[5]),

                                    *Paul Little*

                                    Clerk

Entered:  March 20, 2025.

---

[5] The panelists are listed in order of seniority.